Nov. Term,<br>1850.<br><br>COHEN<br>v.<br>HANNEGAN.

---

### COHEN *v.* HANNEGAN.

Bill in chancery by *A.*, guardian of the heirs of *B.*, against *C.* and others. The facts are as follow: In *June*, 1840, *D.* obtained a judgment against *E.* for 225 dollars. In *November* following *F.* obtained a judgment against *E.* for 500 dollars. In *December* following *E.* conveyed by mortgage to *A.* a part of a town lot, 73, in *Centreville*, as a security for the payment of 1,200 dollars. In *April*, 1841, he conveyed by deed a part of lot 71 in said town for 640 dollars to *C.* *E.* had no other real estate. Both lots were bound by the judgments of *D.* and *F.* In *August*, 1841, executions issued, by virtue of which said part of lot 73 was sold to *G.* for a sum sufficient to pay the judgments. The object of the bill was to obtain a decree against *C.* for the value of the part of lot 71, and a decree to that effect was rendered. Neither *D.*, *E.*, *F.*, nor *G.* was made a party. *E.* was insolvent. *Held,* that the decree could not be sustained—1st. Because there is no precedent for such a proceeding; 2d. The principal governing in an analogous case at law is against it; 3d. The bill was not necessary to secure the party his right; 4th. It would work injustice to *C.*, &c.

ERROR to the *Wayne* Circuit Court.

PERKINS, J.—This was a bill in chancery by *Daniel Hannegan*, guardian of the minor heirs of *Martin Beeson*, deceased, against *Harrison Cohen* and others.

The facts, so far as it is necessary here to state them, are as follow:

On the 15th of *June*, 1840, *William Ellsberry* obtained a judgment in the *Wayne* Circuit Court against *Jacob W. Fisher* for 225 dollars; and on the 2d of *November*, of the same year, *Daniel Clarke* obtained judgment in the same Court against said *Fisher* for 500 dollars.

Wednesday,<br>December 4.

On the 14th of *December*, 1840, *Fisher* conveyed, by way of mortgage to *Hannegan*, a part of lot 73, in the town of *Centreville*, *Wayne* county, as a security for the payment of 1,200 dollars, and, on the 27th of *April*, 1841, he conveyed, by deed in fee simple, to *Harrison Cohen* a part of lot 71, in the same town, for 640 dollars. *Fisher* had no other real estate. Both of the foregoing pieces were bound by the judgment of *Ellsberry* and *Clarke*. On the 24th of *August*, 1841, executions were issued on said judgments, by virtue of which, on the 20th of *November*, 1841, said part of lot 73, so mortgaged to *Hannegan*, was sold to *Thomas Commons* for a sum sufficient to pay the judgments. The object of the bill in this case was to obtain a decree against *Cohen* for the value of the part of lot 71, purchased by him of *Fisher*, and a decree to that effect was rendered. Neither *Fisher*, nor *Commons*, nor *Ellsberry*, nor *Clarke*, was made a party. *Fisher* is insolvent. The bill was filed in *August*, 1845.

We are of opinion that the bill in this case cannot be sustained for the following reasons:

1st. The books furnish no precedent for such a proceeding. This is a strong argument against the right to it.

2d. The principal governing in an analogous case at law is against it. Our statute declares that the personal property of a judgment-debtor shall be sold by the sheriff before his real property. Now, suppose an execution in the hands of the sheriff, binding the personal and real property of the debtor; suppose, while the execution is in the officer's hands, the debtor sells the real property to one man and the personal to another, and that the officer afterwards sells the same real estate to make the money on the execution, could the purchaser of the real estate from the judgment-debtor afterwards sue the purchaser of the personal property, at law or equity, to recover from him its value, because, according to law, it should have first been sold by the sheriff? We never saw such a doctrine anywhere laid down.

3d. Such a bill as the present was not necessary to secure to the plaintiff any of his just rights. Before the

sale of the property by the sheriff, *Hannegan* might have had his bill for marshalling the securities, and compelled the execution-plaintiffs to have first exhausted the lands of the execution-defendant sold subsequently to the conveyance to him, (*Hannegan*,) and thus protected his own. 2 Spence's Equitable Jurisdiction, 834.—*Clowes* v. *Dickinson*, 5 John. Ch. R. 235.

4th. It tends to work injustice towards *Cohen*, the second purchaser from the judgment-defendant, by throwing upon him the risk of the solvency of said defendant, for the interval between the sale of the sheriff and the filing of the bill. Take the case of a judgment-debtor conveying, by deeds of warranty, at different times, his lands to different purchasers. An execution is issued and about to be levied on all or some parts of said lands. Now, if the first purchaser takes immediate steps and throws the execution first upon the lands last purchased, he places the purchaser of those lands in a situation to proceed at once upon the covenants of their grantor. But, suppose on the other hand, the first purchaser, from a desire to convert the lands by him purchased into money, or, from any other consideration, concludes to permit the sale of these lands, and they are sold upon the execution. He delays suit on the covenants in his own deed, or to file his bill. In the meantime the grantor becomes insolvent. The first purchaser then collects, in the manner contemplated by the present bill, his money from the subsequent purchasers. Their remedy is, by this time, lost against the grantor.

5th. *Bain* v. *Williams*, 10 S. & M. 113, is an authority directly in point against this bill; and, "in Sir *William Herbert's* case, 3 Rep. 146, we are told that where it is said in the books that if one purchaser be only extended for the whole debt, that he shall have contribution, it is not thereby intended that the others shall give or allow unto him anything by way of consideration, but ought to be intended that the party who is only extended for the whole may have *audita querela* or *scire facias*, as the case requireth, to defeat the execution, and, thereby, shall be restored to

Nov. Term, all the mesne profits, and drive the conusee to sue execu-
1850. tion of the whole land, so, in this manner, every one shall
GRONENDYKE be contributory, that is, the land of every terre tenant
v. shall be equally extended. And, it appears that the prof-
CRAMER. fer to avail himself of this right, must plead, in the first
instance, that all the terre tenants have not been warned,
otherwise he loses his benefit, in case execution is taken
out against his land alone. 2 Wms. Saund., note to page
10, and authorities there collected."—Am. L. Mag., vol. 3,
p 71, (1844). The rule as to the liability of purchasers
of incumbered lands is now different from that above
stated, but the authority bears upon the question of con-
tribution where a part has been suffered to be sold.

We may remark that the case of *Clowes* v. *Dickerson*,
*supra*, seems to be one standing upon its own peculiar
circumstances, and not to be regarded as an authority for
the bill in the case before us. It does not appear, from
that case, in what character the defendant was held liable.

*Per Curiam.*—The judgment is reversed.

*J. S. Newman*, for the plaintiff.

*J. B. Julian*, for the defendant.